IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

**LAKISHA WILLIAMS, on behalf of herself
and those similarly situated,**

    Plaintiff,                             Case No.: 2:21-CV-02553-JTF-cgc

v.

**FIRST HORIZON CORPORATION, and
FIRST HORIZON BANK,**

    Defendants.

_____/

## JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT
## AND DISMISSAL WITH PREJUDICE

TO THE HONORABLE UNITED STATES DISTRICT COURT:

    Plaintiff, Lakisha Williams (hereinafter "Williams" or "Plaintiff"), on behalf of herself and those similarly situated (collectively "Plaintiffs"), and Defendants, First Horizon Corporation ("FHC"), and First Horizon Bank ("FHB") (FHC and FHB collectively referred to as "Defendants") (Plaintiff and Defendants collectively referred to as the "Parties") through their undersigned counsel, respectfully move that the Court: (1) approve the terms of the Settlement Agreement that they agreed upon and executed following arms-length negotiations; (2) dismiss this case with prejudice and direct the entry of final judgment; and (3) grant such further relief as the Court deems just. In support of this motion, the Parties state:

1

## FACTUAL BACKGROUND

Defendants are a bank and its holding company parent. Plaintiffs were employed by Defendants[1] as Risk Compliance Officers I and/or II and collectively worked in this capacity at times between February 26, 2018 and the present. At all times prior to March 14, 2021, Defendants classified Plaintiffs and all employees who held the Risk Compliance Officer position as exempt from overtime under the FLSA. As such, prior to March 2021, Defendants did not pay Plaintiffs overtime premium compensation if/when they worked over 40 hours in a workweek. *See* D.E. 1.

Although Defendants reclassified the Risk Compliance Officer position as non-exempt and overtime eligible in March 2021, they steadfastly contend that the position was properly classified as exempt at all times prior to March 2021. Thus, while they now pay overtime premiums to their Risk Compliance Officer employees, to the extent they are credited with having worked over 40 hours per week, they have not made any retroactive payments to Plaintiffs, regarding the overtime hours Plaintiffs alleged they worked prior to March 2021.

Prior to commencing the lawsuit in late 2020, Plaintiffs sent a pre-suit demand letter seeking to explore the possibility of settlement with Defendants. Thereafter, the Parties entered into a tolling agreement so that they could explore settlement without prejudice to Plaintiffs and their statute of limitations. Defendants also provided Plaintiffs with extensive time and pay data pertaining to all Risk Compliance Officers who were employed in the three (3) years immediately preceding the tolling agreement to facilitate settlement discussions. Thereafter, the

---

[1] Defendants maintain that Plaintiffs were only employed by First Horizon Bank and not by First Horizon Corporation, a separate legal entity. For purposes of this settlement; however, both names parties are included in the Agreement.

Parties actively held settlement discussions for 5-6 months, ultimately reaching impasse. When settlement discussions stalled in or about July 2021, Plaintiffs filed suit shortly thereafter. *See* D.E. 1.

By stipulation of the Parties, this case was conditionally certified as a collective action, and notice issues to all eligible employees. [D.E. 26]. Ultimately, a total of four (4) employees joined the case as opt-in Plaintiffs, in addition to Plaintiff Williams.

Following the closure of the notice period, the Parties resumed settlement discussions in earnest, and ultimately reached settlement. Under the settlement, Plaintiffs will receive a total of $60,000.00 in unpaid wages and liquidated damages. In addition, and negotiated separately from the amounts payable Plaintiffs, Defendants have agreed to pay Plaintiffs' reasonable attorneys' fees and costs in the amount of $35,000. The Parties respectfully submit that this recovery is fair and reasonable under the facts of this case and that the Parties had ample information to evaluate their respective claims and defenses prior to reaching settlement.

Plaintiffs' counsel collected documentation from Plaintiffs and interviewed Plaintiffs several times regarding the number of hours that they allege they worked for Defendants, the primary duties they performed, and Defendants' alleged violations of the FLSA. Defendants subsequently provided Plaintiffs' counsel with all of Plaintiffs' time records and records for payments made to Plaintiffs. With the information provided by the Defendants, Plaintiffs' counsel calculated Plaintiffs' potential damages, shared Plaintiffs' calculations of their respective claimed damages with Plaintiffs and provided Defendants' counsel with a spreadsheet that detailed the wages Plaintiffs claimed to be owed. Plaintiffs claimed to have worked 15-20 hours of overtime per week. If Plaintiffs were able to successfully defeat Defendants' exemption defense and prove the overtime hours claimed, their prospective collective overtime back wages

would total approximately $63,939.79 - $78,148.63 (before liquidated damages). Thus, the amount agreed to in this settlement pays Plaintiffs on average nearly 15 overtime hours per week. Per the Settlement Agreement, the Plaintiffs will be paid their pro rata portion of the total settlement amount based on the weeks worked and respective pay rates.

Defendants vigorously dispute Plaintiffs' claims and contend that: (1) Plaintiffs' were properly classified as exempt at all times prior to March 2021; (2) such classification was made in "good faith," even to the extent it was erroneous; and (3) Plaintiffs have overstated their hours worked and/or potential damages. Defendants' claim that based on their records, Plaintiffs <u>in total</u> would only be owed $2,536.49 in overtime damages. As such, *bona fide* issues exist with regard to both Defendants' liability and Plaintiffs' potential damages. Notwithstanding these issues, the Parties have reached a settlement, which will pay each Plaintiff, on average, $12,000 per person. Plaintiffs agreed to compromise their claim on liquidated damages while Defendants' compromised their position on hours worked by Plaintiffs. The Settlement Agreement is attached hereto as **EXHIBIT A**.

By their instant Motion, the Parties seek the Court's approval of their settlement as fair and reasonable.

## MEMORANDUM OF LAW

### A. LEGAL STANDARD.

District courts within the Sixth Circuit follow the Eleventh Circuit in holding in that a compromised FLSA claim must be supervised by the Secretary of Labor or a court. in *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352–53 (11th Cir.1982); *Nutting v. Unilever Mfg. (U.S.) Inc.*, 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014); *Thompson v. United Stone, LLC*, 2015 WL 867988, at *1 (E.D. Tenn. Mar. 2, 2015). In

reviewing a proposed FLSA settlement, "a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Bartlow v. Grand Crowne Resorts of Pigeon Forge,* 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012) (quoting *Lynn's Food Stores*, 679 F.2d at 1355); *see also Nutting*, 2014 WL 2959481, at *3; *Thompson*, 2015 WL 867988, at *1; *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *2 (N.D. Ohio Mar. 8, 2010).

When determining whether a settlement is fair, reasonable, and adequate, courts within this district look to the following factors: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of litigation; (3) the stage of the proceedings and the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Nutting* 2014 WL 2959481, at *3. Furthermore,

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claim; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

*Herrera v. R & L Carriers, Inc.*, 2017 U.S. Dist. LEXIS 143608, *3 (M.D. Fla. Aug. 31, 2017) (quoting *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)); *see also Paxton v. Bluegreen Vacations Unlimited,* No. 3:16-CV-523, 2019 WL 2067224, at *2 (E.D. Tenn. May 9, 2019) (citing *Bonetti* with approval).

### B. THE SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE.

As more fully set forth above, the settlement is a fair and reasonable resolution of a *bona fide* dispute. The Parties dispute the underlying theories of the case, if Plaintiffs are entitled to

5

damages at all, and if so, in what amount. *See Dillworth*, 2010 WL 776933, at \*5 (finding a bona fide dispute based on similar circumstances); *Rotuna v. West Customer Mgmt. Group, LLC*, 2010 WL 2490989, at \*5 (N.D. Ohio June 15, 2010) (same). Specifically, Defendants dispute whether Plaintiffs are owed any overtime at all, whether liquidated damages are appropriate, and if wages are owed, what is the proper amount owed based on hours actually worked.

First, the risk of fraud or collusion is minimal because the settlement was reached only after the Parties engaged in arms-length negotiations by experienced counsel following the exchange of key pieces of information over the course of nearly a year of active negotiations.

Second, the settlement eliminates the inherent risks and expense both Parties would incur if this litigation were to continue through resolution on the merits. If this case were to proceed to trial, the Parties would expend considerable effort and incur sizeable costs in preparation for trial, with risks for all Parties regarding the ultimate resolution of the case. While there is little doubt about Defendants' financial wherewithal settlement at this stage in the case negates risks of non-payment in addition to the risk that Plaintiffs might not prevail on their claims.

Third, the Parties have engaged in extensive informal discovery and some formal discovery as well, which has enabled Plaintiffs' counsel to assess the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses, and make an informed assessment of the proposed settlement. Plaintiff's counsel thoroughly investigated Plaintiff's claims. Accordingly, Plaintiff's counsel was able to obtain information necessary to thoroughly access the value of Plaintiff's claims.

Fourth, although both Parties remain confident that they will succeed at trial on the merits, there is no guarantee as to the outcome for either party, and this settlement allows the Parties to avoid a complex and lengthy trial with an uncertain outcome. Moreover, and critically

6

in this instance, the settlement is reasonable considering the amount of time that Plaintiff was employed with Defendant, and the risks of benefits of proceeding with litigation in light of the facts, including but not limited to the risk that Plaintiff could obtain a better result at trial, a worse result a trial, the same result at trial or a zero amount at trial. The uncertainty of trial is contrasted by the certainty and finality that comes with this settlement. *Dillworth*, 2010 WL 776933, at *5.

Fifth, Plaintiffs' counsel together with Plaintiffs evaluated the facts of the case, Plaintiffs' claims, the documentary evidence, and the likelihood of success on the merits. Plaintiffs' counsel and Plaintiffs calculated the settlement range based on their rates of pay, the number of weeks worked, the number of hours worked, including overtime and regular rate hours, compared with the time and pay records, liquidated damages, and attorneys' fees. While Defendants do not agree with Plaintiffs' calculation of damages, they agree that the settlement range is reasonable under the circumstances.

Sixth, Plaintiffs' counsel is experienced in litigating collective action wage and hour lawsuits with issues similar to the present case and based on their knowledge of the case and the applicable law, she believes that the settlement is fair, reasonable, and adequately represents Plaintiffs' interests. Courts are permitted to give the opinion of plaintiff's counsel substantial deference in approving settlement agreements. *See, e.g., Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at * 27 (M.D. Tenn. Aug. 11, 1999). Plaintiffs have been advised of the consequences and impact of settlement, has been giving multiple opportunities to ask questions about the terms and conditions of the settlement, was directly involved in the settlement negotiations, and understood the benefits and risks of accepting the proposed settlement. In light of these facts and circumstances, the settlement is fair and reasonable.

In a nutshell, Plaintiffs negotiated, through their counsel, settlement terms that are satisfactory to the Parties. The undersigned counsel, who are experienced in wage and hour matters, view the agreed-upon terms as a good outcome for the Parties. It could be years before this matter is ready for a trial, and this Court ultimately could determine that Plaintiffs are not entitled to any recovery. There has been no fraud or collusion in the settlement of this case, and settlement will prevent expensive, protracted, and uncertain litigation. Moreover, the amount for attorneys' fees and costs that Defendants will pay to Plaintiffs is reasonable and was agreed upon without regard to the amounts paid to Plaintiffs. Ultimately, after assessing their respective positions and consulting with their counsel, the Parties decided that it is in their respective best interests to resolve this matter early through settlement rather than to proceed through protracted and costly litigation. Therefore, the Parties and their respective counsel believe that the settlement is fair and reasonable.

## CONCLUSION

This FLSA settlement is the product of arms-length negotiation between the Parties' counsel and fairly and reasonably resolves a bona fide dispute between the Parties. The Settlement Agreement satisfies the criteria set forth by the Sixth Circuit. For these reasons and all those set forth above, the Parties respectfully request that this Court grant the Parties' Joint Motion to Approve Settlement and Dismissal with Prejudice.

WHEREFORE, Plaintiffs and Defendants jointly request that the Court enter an order approving their settlement and dismiss the above case with prejudice.

Dated: August 9, 2022

| **Morgan & Morgan, P.A.** | /s/ *EMMA R. DAVIS* |

| | |
|---|---|
| */s/ C. Ryan Morgan*<br>C. Ryan Morgan, Esq.<br>*(Admitted Pro Hac Vice)*<br>FBN 0015527<br>N. Orange Ave., 15th Floor<br>P.O. Box 4979<br>Orlando, FL 32802-4979<br>T: (407) 420-1414<br>F: (407) 245-3401<br>E: Rmorgan@forthepeople.com<br><br>*/s/ Andrew R. Frisch*<br>Andrew R. Frisch<br>MORGAN & MORGAN, P. A.<br>8151 N. Pine Island Road, Suite 4000<br>Plantation, FL 33324<br>T: (954) WORKERS<br>F: (954) 327-3013<br>E: AFrisch@forthepeople.com<br><br>***Attorneys for Plaintiff and the Putative Class Members*** | EMMA R. DAVIS<br>(Tennessee Bar No. 033501)<br>Primary E-Mail:<br>*eredden@bakerdonelson.com*<br>Secondary E-Mail:<br>*tthompson@bakerdonelson.com*<br>165 Madison Avenue, Suite 2000<br>Memphis, TN 38103<br>T: (901) 577-8157<br><br>*/s/ Dena H. Sokolow*<br>DENA H. SOKOLOW<br>(Florida Bar No. 0030856)<br>**(*Admitted Pro Hac Vice*)**<br>Primary E-Mail:<br>*dsokolow@bakerdonelson.com*<br>Secondary E-Mail:<br>*lterry@bakerdonelson.com*<br>3301 Thomasville Rd, Suite 201<br>Tallahassee, FL 32308<br>T: (850) 425-7550<br><br>*/s/ Ashleigh Singleton*<br>ASHLEIGH SINGLETON<br>(Florida Bar No. 1025754)<br>**(*Admitted Pro Hac Vice*)**<br>Primary E-Mail:<br>*asingleton@bakerdonelson.com*<br>3301 Thomasville Rd, Suite 201<br>Tallahassee, FL 32308<br>T: (850) 425-7550<br><br>***Attorneys for Defendants, FIRST HORIZON CORPORATION and FIRST HORIZON BANK*** |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the CM/ECF system on this 9th day of August, 2022, which I understand will send a notice of same to all counsel of record for Defendants.

*/s/ ANDREW R. FRISCH*
Andrew R. Frisch